IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES T. LANE, | : | Civil No. 3:17-cv-0070 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| HSA DAVID BENOIT, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM[1]

### I. Background

Plaintiff James T. Lane ("Lane"), at all times relevant, an inmate incarcerated at the Luzerne County Correctional Facility ("LCCF"), Wilkes-Barre, Pennsylvania, initiated this action pursuant to 42 U.S.C. § 1983, on January 11, 2017. (Doc. 1). In his amended complaint filed on May 18, 2017, Lane advances two theories of liability: (1) "Violation of [his] 8th Amendment Rights Deliberate Indifference to Serious Medical Needs", and (2) "Violation of [his] 1st Amendment Rights Retaliation for Filing Grievances". (Doc. 26, pp. 8, 9).

Ripe for disposition is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by remaining Defendants Kristin Eggert ("Eggert")[2] and Karen

---

[1] This matter has been reassigned to the undersigned upon the death of the Honorable James M. Munley.

[2] Lane incorrectly identifies Kristin Eggert as Christen Eggert.

Balucha ("Balucha").[3] For the reasons set forth below, the Court will grant Defendants' motion.

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

---

[3] On September 23, 2019, Defendants David Benoit, Renato Diaz, and Elizabeth Joyce entered into a Stipulation of Dismissal as to Fewer than all Defendants. (Doc. 117).

admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(C)(3). "Inferences should be drawn in the light most favorable to the nonmoving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Id.* (internal quotations, citations, and alterations omitted).

III. **Statement of Undisputed Facts**[4]

On April 1, 2015, Luzerne County entered into a three-year contract with Correct Care Solutions, LLC ("CCS"), for the provision of comprehensive health and medical services to Luzerne County Division of Corrections' (LCDOC) inmates/detainees. (Doc. 103, ¶¶ 14-17; Doc.103-2). LCCF is under the LCDOC umbrella. The contract was in full force and effect during Lane's stay at LCCF. (*Id.*).

Defendants Eggert and Balucha are employed at LCCF as licensed practical nurses ("LPNs"). (Doc. 103, ¶ 20(1); ¶ 21(1); Doc. 108, ¶ 1(1)). Their job responsibilities principally involve conducting intake interviews and gathering medical histories of new inmates, passing medication, and administering wound care and diabetic maintenance pursuant to physicians' orders. (*Id.* at 20 (2); *Id.* at 21(2); *Id.* at 6). Their duties also include fielding inmates' verbal complaints and written sick call requests. (*Id.*; *Id.*; *Id.*). Each inmate's sick call request is ultimately evaluated by CCS's medical staff. (*Id.*; *Id.*; *Id.*).

Results of inmates' diagnostic studies are communicated to employees of CCS and contract physicians for LCCF. (Doc. 103, ¶ 20 (4), ¶ 21(4)). LPNs are not provided with

---

[4] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LR. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. *Id.* Lane failed to file a separate statement corresponding to the numbered paragraphs in Defendants' statement. Instead, in his "Opposition of Disputed Material Facts Against Defendants Eggert and Balucha's Motion for Summary Judgment" (Doc. 108) he handpicks statements made by Defendants and largely responds with unsupported statements and argument. In accord with Rule 56 governing standards, the Court will only give weight to those statements of undisputed facts supported by the record.

such results. (*Id.*). In their experiences as LPNs, neither Defendant Eggert nor Defendant Balucha have ever been provided with the results of an inmate's diagnostic study. (*Id.*). Nor have they ever been directed to inform an inmate of the results of any study performed. (*Id.*). Consequently, neither Defendant Eggert nor Balucha provided Lane with the results of the MRI of his right knee conducted on March 28, 2016. (*Id.* at 8, 20(4), 21(4)).

At his deposition, Lane testified that in response to his request for his MRI results, Defendant Eggert berated him in responding '…if Medical hasn't called you, then the results was [sic] negative. If you're not dying or bleeding, stop bullsh---ing Medical." (Doc. 103, ¶ 8; Doc. 108, ¶¶ 3(a) and (b)). Lane believed Defendant Eggert was aware of the results of his MRI "[b]ecause [he] was on meds and so from [sic] them to put [him] on meds, there had to be some reason that [he] was getting medication, so she had to have some type of knowledge on why [he] was being given pain medication." (*Id.*; *Id.* at 3(c)).

Lane received the results of the MRI on April 16, 2016. (Doc. 103, ¶ 10). On June 17, 2016, he filed a grievance complaining about medical staff's failure to address his right knee issues following his MRI results. (Doc. 108, p. 10). CCC progress notes dated August 9, 2016, indicate Lane was referred for an orthopedic consult. (Doc. 103, ¶ 18; Doc. 103-7, p. 94). This resulted in a diagnosis of internal derangement of his right knee that required surgery. (*Id.*; *Id.*). An August 12, 2016, CCC progress note indicates that he is scheduled for knee surgery. (*Id.*; *Id.*). Dr. Michael Raklewicz performed the surgery on September 7, 2016. (Doc. 103, ¶¶ 9,18).

Following surgery, Lane was prescribed pain medication. Defendant Balucha has no recollection of failing to distribute that medication to Lane. (*Id.* at 21(7)). Lane, however, maintains that she "denied him pain medication on two different days [after his knee surgery], and after he filed his grievance against [her] she then stopped her acts of retaliation." (Doc. 108, ¶ 12). He testified at his deposition that on two instances "she deliberately didn't give [him] [his] meds as scheduled and then made [him] wait hours to receive [his] meds after [he] kept pressing, pressing, having people press the button and saying 'Give me a grievance'". (*Id.* at p. 6). He considered the conduct deliberate. "[I]f you're on the block and your job is to deliver meds, that's your job. You're on the block with the med cart. Any other time they give the med cart and anybody else is there, I get my meds the same time as every other inmate. Why specifically I'm in this cell you skip – you go past my cell to all the way to the end. That's deliberate. And then when I scream out 'Ma'am you forgot my cell' you tell me my name, 'Lane, I know who it is,' you know she knew what she was doing." (*Id.*). The grievance Lane references is dated September 19, 2016. (*Id.* at 7). Therein, he complains that "[w]hen [he] asked nurse Karen why [he is] always late to get [his] meds [he] was given a [sic] unprofessional attitude." (*Id.*).

In their sworn affidavits, Defendants Eggert and Balucha state that they have no specific recollection of ignoring Lane's verbal complaint or complaints of pain or discomfort in his right knee or any other area of his body. (Doc. 103, ¶ 20(5)); ¶ 21(5)). LCCF has a specific procedure for an inmate requesting a sick call; they represent that their responses

6

to inmate complaints have never deviated from that procedure. (*Id.*; *Id.*). They also swear that allegations that they ignored his complaints in retaliation for his filing of grievances against their coworkers is false. (*Id.* at 20(5), (7); *Id.* at 21(6), (8)).

According to Lane's medical chart, when he voiced a complaint concerning his medical care, CCS personnel responded to the complaint. (Doc. 103-7, pp. 3. 5-22, 35-68, 73, 75,105-126,165-167).

IV. <u>Discussion</u>

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.; see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002*); Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under §1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## A. Eighth Amendment Claim

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

It is undisputed that Lane's knee injury constituted a serious medical need. Accordingly, our focus is on whether either Defendant Eggert or Balucha acted with deliberate indifference to Lane's medical needs. "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). A plaintiff may make this showing by establishing that the defendants "intentionally den[ied] or delay[ed] medical care." *Id.* (quotation marks omitted). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotation marks omitted). "Mere disagreement as to the proper medical treatment [does not] support a claim of an [E]ighth [A]mendment violation." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *see also Durmer v.*

8

*O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (explaining that deliberate indifference requires something "more than negligence"). Moreover, deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

1. <u>Defendant Eggert</u>

Lane seeks to impose Eighth Amendment liability on Defendant Eggert based on her failure to provide him with results of the March 28, 2016 MRI of his right knee. It is undisputed that Defendant Eggert had no access to diagnostic test results and, as such, she cannot be found liable for failing to provide them. Even if she had access to such results, the failure to provide them to Lane cannot be considered an intentional denial or delay of medical treatment. He was simply seeking information, not medical treatment.

With regard to his contention that she acted unprofessionally in answering his inquiry, such conduct is not actionable. Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under section 1983. "Verbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment." *Washington v. Rozich*, 734 F. App'x 798, 801 (3d Cir. 2018) (*per curiam*) (citing *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) and *DeWalt v. Carter*, 224 F.3d 607, 612

(7th Cir. 2000)); *see Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) (*per curiam*) (finding "allegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983*.*"); *Wright v. O'Hara*, Civ. A. No. 00-1557, 2004 WL 1793018, at *7 (E.D. Pa. Aug. 11, 2004) (stating "[w]here plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit."); *Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) (noting "[m]ean harassment ... is insufficient to state a constitutional deprivation."). While Eggert's comment, which she disputes making, may be unprofessional and inappropriate, it does not amount to a constitutional violation.

Defendant Eggert is entitled to an entry of summary judgment on the Eighth Amendment claim.

### 2. Defendant Balucha

Lane asserts that Balucha intentionally denied him medical care in failing to provide him pain medication on two occasions. Of record is Defendant Balucha's sworn affidavit wherein she swears that she has no recollection of failing to distribute medication to Lane. Also of record are Lane's deposition testimony and his September 19, 2016 grievance, both of which make it clear that his Eighth Amendment claim against Defendant Balucha is based on her failure to timely administer pain medication to him, on two separate occasions, approximately twelve days after his knee surgery.

In viewing the above facts in a light most favorable to Lane, it is clear that he has not raised a genuine issue of material fact. As stated *supra*, to act with deliberate indifference is to recklessly disregard a substantial risk of serious harm. *See Giles*, 571 F.3d at 330. The untimely delivery of medication on two occasions does not, as a matter of law, present a claim of the infliction of serious harm or a substantial risk of such infliction. Such conduct is more akin to a dispute over the adequacy of treatment and, at most, constitutes negligence. Because this record could not lead a rational trier of fact to find for Lane, summary judgment will be entered in Defendant Balucha's favor.

### B. First Amendment Claim

Also contained in Lane's complaint is a claim that Defendants Eggert and Balucha violated his First Amendment rights in retaliating against him because he filed grievances against their coworkers. The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000).

To prevail on a retaliation claim, Lane bears the burden of demonstrating three elements. First, he must prove that he was engaged in a constitutionally protected activity.

*See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, he must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah*, 229 F.3d at 225). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Significantly, the effect of the adverse action must be more than *de minimis*. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Third, he is required to show that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take action against him. *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

1. <u>Defendant Eggert</u>

Lane asserts that on some unspecified date between March 28, 2016, and April 16, 2016, Defendant Eggert refused to provide him the results of his MRI and berated him

because he filed grievances against her coworkers. However, the record is devoid of any such evidence. In fact, the grievances of record, one dated June 17, 2016, and the other dated September 19, 2016, post-date the alleged retaliatory conduct of which he complains. (Doc. 103, pp. 7, 10). Lane fails to clear the first hurdle in that he has not establish that he was engaged in constitutionally protected activity at the time of Defendant Eggert's alleged retaliatory conduct. Consequently, she is entitled to an entry of summary judgment on this claim.

      2.      Defendant Balucha

Lane also alleges that Defendant Balucha failed to timely deliver his post-surgery pain medication in retaliation for him having filed grievances against her coworkers. Although he alleges this occurred on two separate dates, the only specific date in the record is September 19, 2016. It is undisputed that he filed a grievance complaining of Defendant Balucha's conduct on that date. (Doc. 103, p. 7). It is also undisputed that the grievance was filed after Balucha's alleged retaliatory conduct. This is further evidenced by Lane's deposition testimony that "…after he filed his grievance against [Balucha] she then stopped her acts of retaliation." (Doc. 108, ¶ 12, pp. 6,7). It is clear that Lane filed his grievance after Balucha's alleged retaliatory conduct. As such, it cannot be the impetus for that retaliatory conduct. Summary judgment will be entered in Balucha's favor on the First amendment claim.

## V. Conclusion

Based on the foregoing discussion, Defendants' motion for summary judgment will be granted.

A separate Order shall issue.


Dated: March 30, 2020              _s/ Robert D. Mariani_____
                                   Robert D. Mariani
                                   United States District Judge